ESTATE OF CHARLES W. SMITH, DECEASED, THE NORTHERN TRUST COMPANY, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9463-74.    Filed June 9, 1976.

*I. John Snider II* and *Frederic A. Sytsma,* for the petitioner.
*James C. Lynch,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency in the estate tax of the Estate of Charles W. Smith in the amount of $646,700.50. This deficiency resulted from a disallowance of $1,330,101.62 of a claimed marital deduction of $1,521,245.86. The propriety of that disallowance is at issue herein.

The sole question for our determination is whether a property interest which passed from the decedent to his surviving spouse pursuant to the terms of a trust instrument which contained a so-called marital deduction "equalization clause" qualified under section 2056, I.R.C. 1954,[1] for the marital deduction.

All of the facts have been stipulated and those facts together with material facts ascertained from the stipulated exhibits are found accordingly and are hereafter summarized.

Decedent Charles W. Smith died on June 7, 1970, a resident of North Muskegon, Mich. Prior to his death, by agreement dated August 2, 1967, by and between himself and the Northern Trust Co. of Chicago, Ill., decedent established the Charles W. Smith Trust (hereafter sometimes referred to as the trust or inter vivos trust), a revocable trust with income payable to decedent for life, into which decedent transferred a substantial portion of his assets.[2] The Northern Trust Co., hereinafter referred to as

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

[2] Decedent and the Northern Trust Co. first executed an agreement establishing a revocable trust entitled the "Charles W. Smith Trust" on Dec. 27, 1952. This agreement was subsequently amended on July 22, 1958. The recitation clause of the Charles W. Smith Trust agreement executed on Aug. 2, 1967, states that this new trust was a result of a desire to amend the then-existing trust. Due to the substantial amendments contemplated, an entirely new trust agreement, rather than a further amendment to the

petitioner, as trustee of said trust, timely filed a Federal estate tax return on behalf of the estate with the District Director, Detroit, Mich. In said return petitioner reported a gross estate, valued at the date of decedent's death, in the amount of $3,492,764.32.[3] Of this amount $3,288,516.99 represented the value of assets held in the aforementioned inter vivos trust.[4] The remainder of the reported gross estate ($204,247.33) consisted of (1) proceeds of an insurance policy on decedent's life (payable to Charles W. Smith Trust); (2) property held jointly with decedent's surviving spouse; (3) property given to surviving spouse in contemplation of death; and (4) a small amount of personal property bequeathed to decedent's surviving spouse. There were no probate proceedings with respect to decedent's estate.[5]

Article IV of the inter vivos trust, entitled "Distribution," provided that all the net income of the trust should be paid to the settlor or at his direction during his lifetime; at the settlor's death the corpus of said trust was to be divided into two portions, the "marital portion" and the "residual portion."

### ARTICLE IV

#### DISTRIBUTION

* * *

ON SETTLOR'S DEATH—Upon the death of Settlor, if his wife, ALICE M. SMITH, survives him, corpus (including additions, but excluding property added to or allocated to a separate asset account by reason of having been added by one other than Settlor, or for any other reason) shall be divided into two portions, one of which shall be called the Marital Portion and the other of which shall be called the Residual Portion.

(a) There shall first be allocated to the Residual Portion any asset or the proceeds of any asset (or interest therein) with respect to which the marital deduction would not be allowed if allocated to the Marital Portion.

---

then-existing trust, was executed.

[3] Respondent determined that this amount was overstated by $461.77 and valued the gross estate at $3,492,302.55.

[4] Among the assets held in trust were U.S. Treasury bonds which qualified pursuant to sec. 6312, and secs. 301.6312-1 and 301.6612-2, Proced. & Admin. Regs., for use in payment of Federal estate taxes and which had an aggregate par value of $650,000. Petitioner determined that the amount of the estate tax liability would permit redemption of no more than $592,500 (par value) of those bonds. The remaining bonds with a par value of $57,500 were included in the computation of the gross estate at their fair market value at date of death, $36,189.06.

[5] Since no executor or administrator was appointed for the estate, Northern Trust Co., as trustee, being in possession of decedent's estate, filed the estate tax return. See sec. 20.6018-2, Estate Tax Regs.

(b) There shall then be allocated to the Marital Portion that percentage interest in the balance of the assets constituting the trust estate which shall when taken together with all other interests and property that qualify for the marital deduction and that pass or shall have passed to Settlor's said wife under other provisions of this trust or otherwise, obtain for Settlor's estate a marital deduction which would result in the lowest Federal estate taxes in Settlor's estate and Settlor's wife's estate, on the assumption Settlor's wife died after him, but on the date of his death and that her estate were valued as of the date on (and in the manner in) which Settlor's estate is valued for Federal estate tax purposes; Settlor's purpose is to equalize, insofar as possible, his estate and her estate for Federal estate tax purposes, based upon said assumptions.

(c) There shall finally be allocated to the Residual Portion the remaining percentage interest in the balance of the assets constituting Settlor's estate.

(d) The percentage interest of the Marital and Residual Portions shall be determined and fixed by using asset values for all such purposes as finally established for Federal estate tax purposes. In selecting a valuation date for the purpose of the Federal estate tax, Settlor directs Trustee to select the date which will result in the greatest tax benefit to Settlor's wife's and Settlor's estates, regardless of the effect this selection may have on the amount provided by this Article for Settlor's wife.

Settlor also authorizes Trustee to make such elections as it shall deem proper including (without limitation intended) the election as to whether certain expenses shall be taken as deductions against estate tax or income tax, regardless of the effect on the pattern of allocation.

The fixed percentage of Settlor's estate allocated to each portion shall, for distribution purposes, be applied to the assets distributed valued at their fair market value at the time of distribution.

(e) The Marital Portion shall be held as hereinafter provided in the section of this Article entitled "Marital Trust".

(f) The Residual Portion shall be held as hereinafter provided in the section of this Article entitled "Residual Trust".

MARITAL TRUST

All property allocated to the Marital Portion shall be held, administered and distributed as follows:

INCOME: All of the net income shall be paid to Settlor's wife for her life.

CORPUS: Settlor's wife may appoint the corpus as she may indicate by deed; provided, however, that this power of appointment is a "special power" as hereinafter defined.

Upon the death of Settlor's wife, Trustee shall pay over the corpus as Settlor's said wife may appoint by her last will; provided, however, that this power of appointment is a "general power" as hereinafter defined; [6] in default of the

---

6 Art. V of the trust defines a general power of appointment as follows:
POWERS OF APPOINTMENT

Where one has been given a power to appoint corpus, he may (except as otherwise limited), at any time or from time to time, appoint all or a portion thereof to such one or more persons, individual or corporate, in such manner and in such proportions, as he shall indicate.

A general power of appointment, as used in this instrument, is a power which may be

exercise of such general power of appointment by Settlor's wife, or insofar as such appointment shall be void or shall not take effect, then upon the death of Settlor's wife, the corpus shall be distributed as if Settlor had died on the date of his wife's death, but surviving her, under the provisions of the Section of this Article entitled "Residual Trust" except that paragraphs (a), (b) and (c) shall be disregarded.

### RESIDUAL TRUST

Trustee shall pay all debts, fees, expenses, taxes and other charges against Settlor's estate which it deems to be proper; provided, nothing herein shall be construed to permit application of the Marital Portion to the discharge of such charges, it being Settlor's intent that all such charges be paid from this Residual Trust.

Decedent's wife, Alice M. Smith (hereafter sometimes referred to as Alice or surviving spouse), survived him and died on August 2, 1971.

The estate tax return filed by petitioner claimed a marital deduction, under section 2056, in an amount of $1,521,245.86. This amount represented the value of the "marital trust" determined by petitioner in accordance with the aforementioned trust provisions, plus $191,144.24 representing the value of property interests passing to decedent's spouse outside of the trust. The calculation of the amount allocated to the marital trust was made as follows: Petitioner determined that had Charles W. Smith's wife, Alice M. Smith, died after him but on the date of his death, her individual gross estate, including any and all assets received from her husband other than the "marital portion" of the Charles W. Smith Trust, would have had a total value of $667,331.47 as valued on the date of his death, June 7, 1970. The value of Alice M. Smith's individual gross estate as determined by the petitioner in this assumed-fact situation would have been $813,630.17 one year from the date of death, the applicable "alternate valuation date."[7] The component parts of the foregoing totals are:

---

exercised without restriction as to appointees and which may be exercised in favor of the appointor's estate.

[7] Pub. L. 91-614, sec. 101(a), amended sec. 2032 to establish 6 months after the date of death as the alternate valuation date. At the date of decedent's death, sec. 2032 provided that the alternate valuation date was 1 year from date of death.

| Computation of individual gross "estate" of Alice M. Smith | Value on June 7, 1970 | Value on June 7, 1971 |
|---|---|---|
| Bank accounts owned jointly with Charles W. Smith _____ | $111,549.24 | $111,549.24 |
| Real property received from Charles W. Smith as a gift made in contemplation of death _____ | 74,000.00 | 74,000.00 |
| Tangible personal property (including bequest of goods and chattels from Charles W. Smith) _____ | 5,595.00 | 5,595.00 |
| Assets in trust under agreement with Alice M. Smith dated Dec. 1, 1952_____ | [8] 476,187.23 | [8] 622,485.93 |
| | 667,331.47 | 813,630.17 |

Petitioner determined that on June 7, 1971, the applicable alternate valuation date, the values of both Charles W. Smith's estate and Alice M. Smith's individual gross "estate" were higher than the date of death values. Consequently, in accordance with the terms of the inter vivos trust instrument petitioner made a determination on June 16, 1971, to utilize date-of-death values for Federal estate tax purposes, including computation of the dollar value of the "marital portion" of the Charles W. Smith Trust.

The dollar value of the "marital portion" of the Charles W. Smith Trust was determined to be $1,330,101.62:

*Computation of marital trust*

| | | |
|---|---|---|
| Total gross estate _____ | | $3,492,764.32 |
| Plus: Debts and claims[1] _____ | | 246,252.10 |
| | | 3,739,016.42 |
| Less: Promissory note _____ | | 220,337.48 |
| | | 3,518,678.94 |
| Less: | | |
| Joint tenancy property _____ | $111,549.24 | |
| Taxable gift of real estate_____ | 74,000.00 | |
| Bequest of goods and chattels _____ | 5,595.00 | 191,144.24 |
| | | 3,327,534.70 |
| Less: Total gross estate of Alice M. Smith _____ | | 667,331.47 |
| | | 2,660,203.23 |

---

[8] (List of assets and asset values omitted.) The stipulated evidence contains no discussion of this trust agreement. However, the Alice M. Smith Trust agreement was executed during the same month as was the agreement between the decedent and the petitioner which established the original Charles W. Smith Trust (see p. 416 n. 2 *supra*). We assume that both trust agreements contained interrelated provisions but the terms of the Alice M. Smith Trust have no relevance to the issue herein.

$$\frac{\$2,660,203.23}{2} = \$1,330,101.62$$

Total marital deduction pursuant to sec. 2056 =
$1,330,101.62 + $191,144.24 = $1,521,245.86

¹ Directed to be paid from assets held in "residual portion," see p. 419 *supra*.

In a notice of deficiency dated September 6, 1974, respondent determined a deficiency in the Federal estate tax of the Estate of Charles W. Smith in the amount of $646,700.50.[9] In the deficiency notice respondent stated that the Charles W. Smith Trust is a nondeductible terminable interest. Thus respondent disallowed the portion of the marital deduction ($1,330,101.62) claimed on the return as attributable to the interest in said trust passing to the surviving spouse. In arriving at the amount of the stated deficiency respondent also increased the value of the reported gross estate by $11,310.94 by including U.S. Treasury bonds at their par value of $57,500 rather than at their fair market value of $36,189.06 as reported on the return.[10]

The issue is whether the value of the property interest which passed from the decedent to his surviving spouse pursuant to the terms of the Charles W. Smith inter vivos trust qualifies under section 2056 as a deduction from decedent's gross estate.[11]

The trust established by decedent in 1967 preserved the income to decedent for life. Article IV of the trust provided that if Charles' wife survived him at Charles' death the corpus was to be divided into two portions, marital and residual. The terms of

[9] In the notice of deficiency respondent recognized that the estate might be entitled to an additional credit for State inheritance taxes which should be taken into consideration in the Rule 155 computation.

[10] This adjustment, although cited as error in the petition, no longer appears to be in controversy. Neither of the parties refers to this matter on brief. We believe respondent made this adjustment under the authority of *Bankers Trust Co. v. United States,* 284 F.2d 537 (2d Cir. 1960), and Rev. Rul. 69-489, 1969-2 C.B. 172. This case and the revenue ruling provide that to the extent that qualifying U.S. Treasury bonds may be utilized in the payment of estate taxes they must be included in the gross estate at the greater of par value or fair market value at date of death; provided, however, that to the extent that the qualifying bonds cannot be so used, e.g., where the par value of the bonds exceeds the Federal estate tax liability, they are to be valued at their fair market value. Since respondent's disallowance of the claimed marital deduction had the effect of increasing the estate's tax liability to an amount exceeding the par value of the bonds in question, he determined that the proper valuation of all the qualifying bonds should be par value.

The alleged error cited in the petition was predicated upon the respondent's disallowance of the marital deduction. Consequently, regardless of the outcome of the marital deduction issue, there should be no controversy as to this matter. *Bankers Trust* and Rev. Rul. 69-489 govern, and any necessary adjustment can be made in the Rule 155 computation.

[11] Our consideration of this issue is limited to the arguments made by the parties.

the trust relating to the marital portion provided the surviving spouse with the right to the income for life, a limited lifetime power of appointment of that portion of the corpus, and an unlimited general power of appointment over that portion at death. The portion of the corpus that was to be allocated to the marital portion, which we will sometimes refer to as the "marital trust," was to be determined by the trustee upon decedent's death under a prescribed formula, which we shall refer to as the "equalization clause." Under the equalization clause all assets which would not qualify for the marital deduction were first to be allocated to the residual portion. The trustee was then to allocate to the marital portion—

that percentage interest in the balance of the assets constituting the trust estate which shall when taken together with all other interests and property that qualify for the marital deduction and that pass or shall have passed to Settlor's said wife under other provisions of this trust or otherwise, obtain for Settlor's estate a marital deduction which would result in the lowest Federal estate taxes in Settlor's estate and Settlor's wife's estate, on the assumption Settlor's wife died after him, but on the date of his death and that her estate were valued as of the date on (and in the manner in) which Settlor's estate is valued for Federal estate tax purposes * * *

The stated purpose of this clause was to equalize, insofar as possible, decedent's estate and his wife's estate for Federal estate tax purposes, based upon the recited assumptions.

In computing the value of the property subject to the estate tax under chapter 11, subtitle B of the 1954 Code, section 2056(a) [12] allows as a deduction from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, subject to certain stated limitations. This is referred to as the "marital deduction."

The marital deduction was first provided in the Revenue Act of 1948. The purpose of the enactment of this provision was to equalize the estate tax on estates of decedents who were residents of noncommunity property States and the estates of decedents who were residents of community property States. S. Rept. No.

---

[12] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

1013, 80th Cong., 2d Sess., 1948-1 C.B. 285, 288. Generally speaking, in community property jurisdictions all property earned by a married individual is deemed owned one-half by him and one-half by his spouse. At death only the one-half deemed owned by the decedent is included in his estate; the other one-half will be taxed in the surviving spouse's estate at her death.[13] To approach this result in noncommunity property jurisdictions, the marital deduction provision allows as a deduction from the decedent's gross estate an amount equal to the value of the interest in property which passes from decedent to his surviving spouse, not to exceed 50 percent of the decedent's adjusted gross estate.[14] But to preclude noncommunity property estates from obtaining more favorable tax treatment than community property estates, certain limitations were imposed on the marital deduction, one of which is the terminable interest rule of section 2056(b)(1). Basically, the purpose of the terminable interest rule was to limit the marital deduction to the value of interests in property passing from the decedent to his surviving spouse which were interests of such a character that, unless consumed or disposed of prior to the surviving spouse's death, would be taxable in the surviving spouse's estate at her death.

Section 2056(b) provides as follows:

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

Thus, an interest in property passing to the surviving spouse will not qualify for the marital deduction if, on the lapse of time or the occurrence or failure to occur of any contingency or event,

---

[13] For convenience, we will refer to the surviving spouse in the feminine gender.

[14] Sec. 2056(c)(2) defines the adjusted gross estate as the gross estate less deductions allowed by secs. 2053 and 2054.

the interest passing to the surviving spouse will terminate or fail, and if an interest in such property passes from the decedent to any other person who may possess or enjoy such property after the termination or failure of the interest passing to the surviving spouse. However, certain exceptions to the nondeductibility of terminable interests have been carved out in the Code.

Section 2056(b)(5) provides such an exception.[15] Under that subsection what would normally be a terminable interest in the surviving spouse, i.e., the right to receive the income from the property for life only, will qualify for the marital deduction if the surviving spouse also has a general power of appointment over the property exercisable at her death. The rationale of this is clear; by virtue of a power of appointment the value of the property will be taxable in the estate of the surviving spouse under section 2041 of the Code.

For a resident of a noncommunity property State to obtain maximum advantage of the marital deduction provision for his estate it is necessary that he provide, in an inter vivos trust or in his will, that on his death an interest in property that will qualify for the marital deduction having a value of at least 50 percent of decedent's adjusted gross estate will pass to his surviving spouse. This could, of course, be accomplished by making a bequest to the surviving spouse of a dollar amount which would be certain to exceed 50 percent of the decedent's adjusted gross estate; however, this method requires guesswork and may result in

---

[15] Sec. 2056(b)(5) provides:

(5) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

It will be noted that this provision does not make the interest passing to the surviving spouse nonterminable; it makes the terminable interest deductible by providing that no interest in the property will be considered as passing to any person other than the surviving spouse.

unnecessarily overloading the estate of the surviving spouse. Therefore, provisions were devised and incorporated in trusts and wills by which the bequests to the surviving spouse were determined by formulas which would provide the maximum marital deduction for the estate of the decedent. As far as we can determine, such formula bequests have not been challenged by the Internal Revenue Service as qualifying for the marital deduction.[16]

However, if the surviving spouse in a noncommunity property State has an estate of her own, to devise deductible property interests to her equal in value to the maximum marital deduction may prove to be uneconomical taxwise due to the progressive structure of the estate tax. That is to say that if all factors remain constant, the lowest aggregate estate tax for the estates of both spouses will result when the taxable estates of each are equal in amount. To achieve the goal of overall estate tax minimization, provisions have been drafted and incorporated into wills and trusts which seek to obtain this objective by use of "equalization formulas," one of which is used in the Charles W. Smith Trust. We can see no reason why the use of an equalization formula per se should disqualify a bequest to a surviving spouse for the marital deduction if the interest in property passing to the surviving spouse otherwise meets the requirements of section 2056.

In order to fully appreciate the positions taken by the parties in the context herein, a general discussion of the "equalization clause" contained in this inter vivos trust is appropriate.

Ignoring all other deductions and assuming the husband dies first as in the case herein, equalization of the estates will be realized only if the wife receives property the value of which equals: one-half of the excess, if any, of the value of the husband's (decedent's) gross estate over the value of the wife's gross estate. For purposes of this computation the composition of assets in the wife's "estate" is determined after but on the same day as her husband. The value of the assets in each estate is first valued as of the date of decedent's death.

---

[16] See Casner, Estate Planning 1479-1480 (1974 Supp.); Covey, The Marital Deduction and the Use of Formula Provisions 6-7 (1975 Supp.); "Vesting of Testator's Property as It Relates to the Marital Deduction," 1 Real Property, Probate and Trust Journal 164 (1966). But see Lauritzen, "Safeguarding the Marital Deduction," 1 Real Property, Probate and Trust Journal 162 (1966).

In order to take advantage of the possible tax savings which may be realized if the value of the assets included in the husband's gross estate declines in value after his death, the clause provides for a second valuation of the assets of both estates at the alternate valuation date. At the time Charles died section 2032 provided an alternate date of 1 year from the date of his death. Therefore, the trustee made this second valuation and determined what value of property must pass to Alice to equalize the estates assuming that Charles' estate used the alternate valuation in computing its estate tax liability.[17]

The provisions of the clause directed the trustee to compare the aggregate estate tax liability of both estates if date of death valuations were used with the liability which would result if alternate date valuations were used. It was directed to choose the valuation date which resulted in the least aggregate tax liability.

Obviously, in order to achieve the goal of equalization of the estates of Charles and Alice, use of the equalization clause precluded a marital bequest of a specific amount. Consequently, the trust provisions provided for a bequest of the "marital portion" of the trust. This marital portion was to consist of an undefined fractional interest in each of the assets remaining[18] in the corpus of the trust which would obtain for Charles' estate a marital deduction which would result in the lowest estate taxes in Charles' and Alice's estates.

After the trustee determined which valuation date was to be used in valuing Charles' estate (and also Alice's estate) and the value of the property interest devised to Alice, there was allocated to the marital portion of the trust that percentage interest in each asset of the trust corpus (as of the date of Charles' death but after allocating the nondeductible assets to the residual trust) which, in the aggregate, equaled that determined value of the property interest.

With this analysis in mind we examine the interest passing to Alice under the terms of the inter vivos trust to determine whether it qualifies for the deduction under both the letter and spirit of the law.

---

[17] The equalization clause requires that Alice's "estate" be valued as of the same date as Charles'. The valuation date is keyed to the two dates that could be used for valuing Charles' estate, i.e., the date of death or the alternate valuation date. No other date could be used.

[18] The trust provisions directed that all assets which would not qualify for the marital deduction were first to be allocated to the residual portion.

The interest in property that passed from decedent to his surviving spouse as a result of decedent's death under the terms of the trust was the right to receive all the income produced by the marital trust during her lifetime and a general power to appoint the entire corpus of the marital trust at her death. This would appear to bring the interest in property received by Alice within the letter of the exception to the terminable interest rule provided in subsection 2056(b)(5) and qualify the value of that interest for the marital deduction under section 2056(a).

Section 20.2056(a)-1(b), Estate Tax Regs., lists five facts that must be established in order to obtain a marital deduction for the value of any interest in property. They are:

(1) That the decedent was survived by his spouse;

(2) That the property interest passed from the decedent to his spouse;

(3) That the property interest is a "deductible interest";

(4) The value of the property interest; and

(5) The value of the decedent's "adjusted gross estate."

There is no controversy that facts (1), (2), (4), and (5) have been established. But respondent argues that required fact (3) has not been established because the property interest received by Alice was not a "deductible interest."

While respondent's argument is based on section 2056(b), the terminable interest rule, he does not argue that the interest received by Alice, being the right to receive the income for life from, plus the general power to appoint the corpus of, the trust, does not comply with all the requirements of section 2056(b)(5). Fundamentally, respondent's argument, as we understand it, is that because the trustee could not determine the percentage of the trust estate which should be allocated to the marital trust until 1 year after Charles' death, this made the interest in property which passed to Alice conditional or contingent on the trustee's decision. In other words, if the trustee decided that no portion of the trust estate should be allocated to the marital trust in order to carry out the directions and objectives of the equalization clause, then the marital trust and Alice's interest therein would terminate or fail. And since the determination of what part, if any, of the trust estate Alice would take an interest in could not be made as of the date of decedent's death, that interest must be considered a nondeductible terminable interest,

relying on *Jackson v. United States,* 376 U.S. 503 (1964).[19]

We disagree. First, we believe respondent is confusing the terminable interest rule and the determination of the value of the property interest passing to the surviving spouse. In our opinion an interest is not terminable under the rule simply because the value or quantity thereof cannot be determined as of the date of decedent's death. Support for this opinion is found in section 20.2056(b)-4 of the regulations which recognizes that the use of the alternate valuation date might affect the amount of the marital deduction.[20] Rather, we think the terminable interest rule applies when the indefeasible quality or character of the surviving spouse's interest cannot be determined as of decedent's death.

Under the terms of this trust instrument Alice had a contingent interest in the trust which, at Charles' death, became vested and indefeasible. There was no subsequent event that could divest her of her interest in the marital portion of the trust, although the value of the interest in property that comprised the marital portion of the trust remained to be determined. But the trustee's obligation under the terms of the trust was fixed and it had no discretion; it was directed to allocate to the marital trust that percentage interest in the trust's assets which would be most advantageous estate taxwise for both estates.

We believe *Jackson v. United States, supra,* illustrates the distinction we make above and supports our conclusion. In the *Jackson* case the question was whether the widow's allowance under California law qualified for the marital deduction. Under California law the widow's allowance is not a vested right and the right is lost if she loses the status upon which the right depends. The court refused to allow the marital deduction because as of the date of decedent's death it was not certain whether the surviving spouse was entitled to a widow's allowance; and the mere fact that the terminable interest might become nonterminable and be taxed in the surviving spouse's estate did not make it deductible. The question was whether the surviving spouse had an interest in the estate (rather than the value of the

---

[19] If respondent contends that because of the trustee's deferred decision the interest in property did not pass from decedent to Alice, he does not articulate that contention.

[20] The executor's or trustee's decision on whether to deduct administration, etc., expenses for estate tax purposes or for income tax purposes, as permitted by sec. 642(g), may also affect the value of the interest a surviving spouse will take without disqualifying the interest for the marital deduction.

interest that she did have), which question must be answered in the affirmative as of the date of decedent's death to qualify under the terminable interest rule.

In our opinion the interest in property which passed from decedent to his surviving spouse at his death under this trust agreement qualifies for the marital deduction under both the letter and spirit of the law. As of the date of decedent's death Alice became indefeasibly vested with the right to the income from the marital trust, whatever that might be, and a general power to appoint the corpus thereof at her death. This would appear to qualify her interest for the marital deduction under the wording of section 2056(b)(5).

Furthermore, we believe the objective of the equalization clause and the result obtained from the application thereof comes within the purpose of the marital deduction provision. If, for example, the formula prescribed in the trust required the trustee to allocate properties or interests therein having a value in decedent's estate for estate tax purposes of $1 million, the estate would be entitled to a marital deduction in that amount, provided it did not exceed one-half of decedent's adjusted gross estate; and upon Alice's death the value of the marital portion of the trust, to the extent not consumed or disposed of, would be taxable in Alice's estate. If, on the other hand, the formula required the trustee to allocate nothing to the marital trust, then the value of Alice's interest in the trust would be zero, the decedent's estate would not be allowed a marital deduction, the entire value of the trust would be taxed in decedent's estate, and there would be no marital trust to be taxed in Alice's estate. The value of the interest in the trust required to be allocated to the marital portion under the formula will be taxed in the estate of either decedent or Alice, but not in the estates of both, as will certainly be the case under respondent's application of the terminable interest rule here. The respondent concedes that, as finally determined, the purposes of neither the marital deduction nor the terminable interest rule would be frustrated by allowing petitioner's claimed deduction because the value of the marital portion of the trust was taxable in the surviving spouse's estate at her death by virtue of her general power of appointment of the marital trust.[21]

---

[21] Alice M. Smith, the surviving spouse herein, died on Aug. 2, 1971. There was no evidence presented as to whether the value of the marital portion was actually included in

We recognize that the determinative factor is whether at the time of decedent's death there was a possibility that any interest Alice received in the trust could fail or terminate, and that the test is not whether that interest would or would not be taxable in Alice's estate. In *Jackson v. United States, supra* at 509-510, it was said:

there is no provision in the code for deducting all terminable interests which become nonterminable at a later date and therefore taxable in the estate of the surviving spouse if not consumed or transferred. The examples cited in the legislative history make it clear that the determinative factor is not taxability to the surviving spouse but terminability as defined by the statute. * * *

But here, as we see it, there was no possibility at the time of decedent's death that any interest Alice received in the trust could fail or terminate. The only thing to be determined as of decedent's death was the value of the interest she received. There were no subsequent events which could occur that would change the basic ingredients of the formula—which were the property in decedent's estate and the property owned by Alice at the time of decedent's death. It is true that the relative values might change between the date of death and the alternate valuation date but this could only change the percentage of the trust estate that would be allocated to the marital portion of the trust. The trustee's choice of which valuation date to use could affect the value of the property interest received by Alice but not the character of her interest therein.

The latest pronouncement from the Supreme Court on the manner in which the marital deduction provisions should be interpreted is in *Northeastern Nat. Bank v. United States,* 387 U.S. 213, 221 (1967), which involved the terminable interest rule and the "specific portion" [22] requirement. The majority opinion described the congressional intent as being—

to afford a liberal "estate-splitting" possibility to married couples, where the deductible half of the decedent's estate would ultimately—if not consumed—be taxable in the estate of the survivor * * *. Plainly such a provision should not be construed so as to impose unwarranted restrictions upon the availablity of the deduction. * * *

---

her estate. However, based upon respondent's concession, with the exception of the value of said marital portion consumed before her death and the value of gifts therefrom, if any, not made in contemplation of her death, we are confident that it was so included.

[22] As provided in sec. 2056(b)(5).

Dispositive of the question of terminability of Alice's property interest is the fact that it was indefeasibly vested at the time of Charles' death, see *Jackson v. United States, supra;* and the question of whether or not the property interest is vested at a point in time is in no way dependent upon whether the value of that interest was ascertainable at that time, see Casner, Estate Planning 1479 (1974 Supp.).

Respondent concedes that normally the valuation required to determine the amount of a permissible deduction in the case of a fractional marital bequest does not result in a disallowance of said deduction. However, he contends that this case is different. In the case of a bequest of a fractional interest [23] the amount or value thereof is unascertainable at the decedent's date of death only because its determination is dependent upon certain elections specifically provided by law [24] which cannot be made until a subsequent date. But here respondent claims there is an additional factor "outside of decedent's estate" needed to compute the amount of the marital bequest under this equalization clause (i.e., the valuation of Alice's estate at the alternate valuation date) which is not contemplated by the law. We fail to see how this distinction requires characterization of the marital portion of the trust as a nondeductible terminable interest. The only possible effect on the spouse's interest from the "additional factor" incorporated in the equalization clause formula relates to the *value* of that interest. And even that effect is limited solely to the amount of market fluctuation in the value of the assets in the spouse's "estate." [25]

On reply brief respondent adopts a different approach to make what essentially amounts to the same argument. He urges us to examine the bare essentials of the transaction at issue herein by ignoring the marital "trust" and direct our attention to the question of what interest Alice received in the "underlying property," i.e., the corpus of the Charles W. Smith trust.

---

[23] Articles which contain descriptions and discussions of formula marital bequests are far too numerous to list herein. However, one treatise which contains an excellent discussion of such bequests is Covey, The Marital Deduction and the Use of Formula Provisions (1966).

[24] See sec. 2032; sec. 20.2053-1(d), Estate Tax Regs.; sec. 642(g); sec. 1.642(g)-1, Income Tax Regs.

[25] The trust provisions directed the trustee to determine what assets Alice owned at Charles' death and the value of those assets at the two valuation dates. Therefore, disposition of any of those assets or acquisition of any new assets was ignored.

Respondent argues that the marital trust was nothing more than a vessel in which property was eventually conveyed to Alice. He believes that viewing the situation in this light leads to the conclusion that, as of the date of Charles' death, any interest Alice might have in the trust corpus was not mature because no determination of what assets she was entitled to could be made at that time. He then concludes that the interest was terminable because of the possibility of its failure to ripen into a mature interest.

Looking at the circumstances in the suggested manner is helpful. Certainly, no matter what type of interest in a trust a spouse received, if the assets which make up the corpus thereof consist of terminable interests or if the trust provision relating to the creation of the corpus was contingent or conditioned on unknown factors or events, that interest would have to be categorized as terminable and no marital deduction therefor would be allowed. However, that is not the situation here. At the instant of Charles' death, Alice was indefeasibly vested in an undefined percentage interest in each and every asset remaining in the trust corpus after all nondeductible property interests were allocated to the residual portion. Thus, the marital portion contained no nondeductible interests; also the trust provision establishing the corpus of the marital portion (the undefined percentage interest in the balance of the trust corpus) was neither conditional nor contingent. Therefore, respondent's argument must fail.

As an alternative to this last argument respondent contends that if the question of terminability rests upon the spouse's interest in the marital "trust" still a deduction must be denied. He alleges that as of the decedent's death there could be *no* interest in said "trust" because no res had been established therefor. In making this argument respondent for the first time treats the marital portion of the inter vivos trust as a separate trust. We find no basis for this argument. The stipulated trust provisions clearly provide that at Charles' death the trust is to be *divided* into two portions. We recognize a distinction between the division of a trust into two parts and the termination of one trust followed by the creation therefrom of two separate trusts; respondent also has recognized such a distinction. See and compare Rev. Rul. 57-495, 1957-2 C.B. 616, with Rev. Rul. 73-97, 1973-1 C.B. 404.

We agree with respondent that the use of the equalization clause herein will cause some additional work on audit of the estate tax return but we simply do not find from the arguments discussed herein a sufficient basis upon which to sustain his disallowance of the marital deduction.

In order to recognize adjustments agreed to by the parties,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

TANNENWALD, *J.,* did not participate.

IRWIN, *J.,* I respectfully dissent. Under section 2056(b)(1) an interest in property passing to the surviving spouse is a non-deductible interest if: (1) On the occurrence of an event or contingency the interest will terminate or fail; (2) an interest in the same property passes from the decedent to any person other than the surviving spouse; and (3) by reason of such passing such person may possess or enjoy any part of such property after termination or failure of the interest passing to the surviving spouse. In this case I believe the interest in property which passed to the surviving spouse was subject to termination after which the beneficiaries of the residual portion of the trust would "possess and enjoy" the property. I would conclude that, under the terms of the statute, the interest in property which passed to the surviving spouse was a nondeductible interest.

The interest in property which passed to the surviving spouse was the right to the income from and a testamentary general power of appointment over the marital portion of the trust.[1] Regardless of whether we call this a "vested right," it was an interest in property which was subject to termination or failure on the occurrence of an event or contingency.[2] Under the terms of the trust nothing was to be allocated to the marital portion if, on the valuation date chosen by the trustee, the value of the assets in the surviving spouse's "estate" equaled or exceeded the value of the assets in decedent's estate. In that event, the majority (as I understand it) believes the surviving spouse's interest in property would not have terminated but would merely have become worthless. Worthlessness, the majority notes, is a question of

---

[1] The surviving spouse also had a "special power of appointment" (not here relevant) over the marital portion which was exercisable during her life.

[2] It is possible to have a vested right in a terminable interest, i.e., a life estate.

value and not indicative of termination. Under the circumstances of this case, I cannot agree.

Admittedly an interest in property which passes to the surviving spouse is eligible for the marital deduction notwithstanding the possibility that the underlying property may decline in value or, indeed, become worthless. In that case, however, the surviving spouse still has an interest in "something" (the underlying property), even though the property is worthless. However, in the instant case if the marital portion of the trust had not been funded, the surviving spouse's interest (the right to income for life and a testamentary power of appointment) would have become an interest in "nothing." An interest in "nothing" is not an "interest in property." I see the potential nonfunding of the marital portion of the trust as an event or contingency upon which the surviving spouse's "interest in property" would have failed.

The majority points out that formula bequests which are designed to achieve the maximum marital deduction have not been challenged by the Internal Revenue Service. While the typical formula fractional share bequest[3] may result in a deductible interest (an issue we are not called on to decide and as to which I have some doubt), it does not follow that this "equalization formula" results in a deductible interest.

An interest in property which passes to a surviving spouse under a formula fractional share bequest will terminate if, between the date of death and the alternate valuation date, there

---

[3] An example of a formula fractional share bequest is as follows:

"If my said wife survives me, I give to * * * [her] the following described fractional share of my residuary estate:

"The numerator of the fraction shall be the maximum estate tax marital deduction (allowable in determining the federal estate tax payable by reason of my death) minus the value for federal estate tax purposes of all items in my gross estate which qualify for said deduction and which pass or have passed from me to my said wife (the words "pass or have passed" shall have the same meaning as such words shall have under the provisions of the Internal Revenue Code in effect at the time of my death) under other provisions of this will, by right of survivorship with respect to jointly owned property, under settlement arrangements relating to life insurance proceeds, or otherwise than under this fractional share gift of my residuary estate (in computing the numerator, the values as finally determined for federal estate tax purposes shall control); and the denominator of the fraction shall be the value of my residuary estate, and to the extent that the items initially in my residuary estate are included in my gross estate, the value at which they are included in my gross estate shall control, and to the extent they are not so included, their value at the time they would have been valued if they had been so included shall control in determining the denominator. When distribution is made, there shall be distributed the above-described fractional share of my residuary estate without regard to whether the total value of what is distributed is more or less than the numerator of the above-described fraction." (Casner, Estate Planning 795 (3d ed.).)

is a fluctuation in the value of the assets passing to the surviving spouse such that the value of assets passing outside the will (and qualifying for the marital deduction) equals the maximum marital deduction.[4] Although in such instance the surviving spouse's interest in the probate assets clearly terminates, respondent apparently concedes that this is not the type of contingency which renders the interest nondeductible within the meaning of section 2056(b)(1). The contingency causing termination of the surviving spouse's interest is a function of the fluctuation in value of assets comprising *decedent's estate* and the availability of the section 2032 election. In his original brief (p. 14) respondent states:

Normally, the valuation required in determining the amount of a marital deduction does not render a fractional interest nondeductible. But in the instant case the valuation of the property is dependent on factors outside of the decedent's estate, which factors will occur at a date subsequent to the date of decedent's death.[5]

I believe the distinction drawn by respondent is significant. Section 2032 is a relief provision; construing an election under section 2032 as a "contingency" within the meaning of section 2056(b)(1) would effectively eliminate such relief for many taxpayers. However, the interest passing to the surviving spouse in the case before us can be distinguished from the interest passing

---

[4] For example, assume that D's will contained a formula fractional share bequest (as described in n. 3) to W, his surviving spouse, and a bequest of the remainder of his estate to his son, X. Assume that on the date of D's death the value of his adjusted gross estate was $1 million, including probate assets valued at $750,000 and Black Acre, held by D and W as joint tenants, valued at $250,000 (the entire value of which is includable in D's gross estate under sec. 2040). Assume also that on the alternate valuation date the value of Black Acre remained unchanged, but that the value of the probate assets dropped to $250,000 (reducing the value of the adjusted gross estate to $500,000).

The interest in property which passed to W, by virtue of D's will, was an undefined portion of the assets in D's probate estate. If the executor elects the alternate valuation date, none of the probate assets pass to W under D's will. W's interest in the probate assets has failed and upon that failure X takes all of the probate assets by virtue of the interest which passed to him under D's will.

[5] With regard to another potential "contingency," respondent cites, with approval, the following:

"The power in the executor to affect the amount passing to the wife under a formula gift by taking certain tax deductions as income tax deductions and thereby increasing the adjusted gross estate might at first be thought to be a power to divert from the wife part of what finally passes to her; that is, the part which would not have passed to her if the deductions had been taken as estate tax deductions with a resultant decrease in the adjusted gross estate. This power in the executor is given by the terms of the Revenue Code itself and, *like other powers created by operation of law, should not disqualify for the marital deduction any part of the gift to the wife.* * * *" (Casner, *supra* at 788 n. 13. Emphasis supplied by respondent.)

under a formula fractional share bequest in that here the contingency involves the fluctuation in the value of assets *outside* the decedent's estate. This is not the type of situation for which section 2032 was designed to provide relief. Consequently, I cannot find any reason to construe this contingency as falling outside the proscriptions of section 2056(b)(1). I conclude, therefore, that the surviving spouse's interest in the present case is a nondeductible terminable interest.

I have reached this conclusion reluctantly. As respondent concedes, the purposes of neither the marital deduction nor the terminable interest rule would be frustrated by allowing petitioner's claimed deduction inasmuch as the value of the marital portion of the trust, as finally determined, will be taxable in the surviving spouse's estate. However, we must reach a result which is consonant with the *statute.* As the Supreme Court said in *Jackson v. United States,* 376 U.S. 503, 509-510 (1964):

there is no provision in the Code for deducting all terminable interests which become nonterminable at a later date and therefore taxable in the estate of the surviving spouse if not consumed or transferred. The examples cited in the legislative history make it clear that the determinative factor is not taxability to the surviving spouse but terminability as defined by the statute. * * *