ESTATE of Charles W. SMITH, Deceased.

The NORTHERN TRUST COMPANY, Trustee, Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 77–1416.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1977.

Decided Nov. 3, 1977.

Myron C. Baum, Asst. Atty. Gen., Robert A. Bernstein, Atty., Tax Div. Dept. of Justice, Washington, D.C., for appellant.

William F. McNally, Fredric A. Sytsma, Muskegon, Mich., for appellee.

Before CUMMINGS, SPRECHER and WOOD, Circuit Judges.

PER CURIAM.

The Commissioner of Internal Revenue has appealed from an adverse decision of the Tax Court. The Commissioner determined a deficiency in the estate tax of Charles W. Smith's estate in the amount of $646,700.50. The deficiency resulted from a disallowance of $1,330,101.62 of a claimed marital deduction of $1,521,245.86. After contesting the assessed amount, Smith's estate sued for a refund on the ground that the marital deduction should have been allowed.

Decedent's 1967 *inter vivos* trust contained an "equalization clause" under which his surviving spouse would take nothing if the values of assets owned by her at his death were subsequently determined, by calculations that could not be made until one year later, to be in excess of certain amounts. The Commissioner insisted that because the amount passing under this provision might be decreased as a result of valuation changes in the alternate valuation period,[1] the wife's interest was contingent and therefore constituted a "terminable interest" under Section 2056(b)(1) which would fail to qualify for the marital deduction for federal estate tax purposes.[2]

The Tax Court, in an opinion by Judge Drennen reviewed by the full Court,[3] held that the equalization clause did not create a terminable interest problem requiring the disallowance of the marital deduction under Section 2056(b)(1). 66 T.C. 415 (1976). Consequently, based on the Commissioner's final computations, taxpayer was awarded $2,907.25 as its estate tax overpayment (App. 45a). We affirm.

The stipulated facts may be summarized as follows: Charles W. Smith (decedent), a Michigan resident, died in 1970. In 1967, he had established a revocable *inter vivos* trust with the Northern Trust Company of Chicago as Trustee. His federal estate tax re-

---

1. Section 2032 of the Internal Revenue Code provides for an alternate valuation date of one year after a decedent's death.

2. Section 2056(b)(1) provides as to marital deductions:
 "(b) *Limitation in the case of life estate or other terminable interest.—*
 "(1) *General rule*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no [marital] deduction shall be allowed * *."

3. Judge Tannenwald did not participate in the review, and Judge Irwin wrote a dissenting opinion.

turn reported a gross estate of about $3,500,000. The assets of the trust amounted to approximately $3,300,000.

On decedent's death, Article IV of the trust divided the trust assets into a "Marital Portion" and a "Residual Portion." The Marital Portion was to be held as a Marital Trust designed to qualify for the marital deduction under the federal estate tax laws pursuant to Section 2056 of the Internal Revenue Code. Under the terms of the Marital Trust, decedent's surviving spouse was to receive all the net income for her lifetime, with a special power of appointment over corpus exercisable by deed and a general power of appointment exercisable by will. Decedent's wife, Alice M. Smith, died shortly more than one year after her husband. The critical provision of Article IV of the trust is the "equalization clause." Its purpose was to equalize the size of the estates of Mr. and Mrs. Smith in order to minimize the total combined federal estate taxes on both estates.

Article IV of the trust, dealing with distribution upon decedent's death, provided for allocating to the Residual Portion any assets with respect to which the marital deduction would not be allowed if allocated to the Marital Portion. Article IV then provided:

"(b) There shall then [after allocation of the Residual Portion] be allocated to the Marital Portion that percentage interest in the balance of the assets constituting the trust estate which shall when taken together with all other interests and property that qualify for the marital deduction and that pass or shall have passed to Settlor's said wife under other provisions of this trust or otherwise, obtain for Settlor's estate a marital deduction which would result in the lowest Federal estate taxes in Settlor's estate and Settlor's wife's estate, *on the assumption Settlor's wife died after him, but on the date of his death and that her estate were valued as of the date on (and in the manner in) which Settlor's estate is valued for Federal estate tax purposes;* Settlor's purpose is to equalize, insofar as possible, his estate and her estate for Federal estate tax purposes, based upon said assumptions." (Emphasis added.)

The equalization clause contained in Article IV(b) is the only one at issue.

Decedent's estate tax return claimed a marital deduction of $1,521,245.86, representing the value of the Marital Trust as determined by the estate, plus the value of certain other property interests passing to Mrs. Smith outside of the trust. The estate determined that had Mrs. Smith died after decedent, but on the same day, her individual gross estate, including all assets received from decedent outside the trust, would have had a value of $667,331.47 on the date of decedent's death. Under this assumed fact situation, the value of Mrs. Smith's gross estate would have been $813,630.17 one year from the date of her husband's death, the alternate valuation date. See note 1, *supra.* On that date, the values of both decedent's estate and the assumed estate of his wife were higher than the date-of-death values. Consequently, in accordance with the terms of the trust, the estate utilized date-of-death values for federal estate tax purposes and for computing the value of the assets in the marital trust.

The Commissioner took the position that the property interest passing from decedent to his wife under the trust was a terminable interest under Section 2056(b)(1) (note 2, *supra*) and therefore determined an estate tax deficiency in the amount of $646,700.50. Of the entire Tax Court, only Judge Irwin agreed that Mrs. Smith's interest was a nondeductible terminable interest, and he "reached this conclusion reluctantly" (66 T.C. at 436) in this case of first impression.

First of all, the Commissioner admits that the equalization clause is not a tax avoidance measure, for estate taxes will still be collected from the estate of each spouse and none of the funds will escape taxation. The clause does have the effect of minimizing the total combined federal estate taxes on both estates by treating the assets of each spouse as if it were pure community property. Such a clause is frequently used in estate planning. See 1 Casner, *Estate*

*Planning* 785 and Supplement (3d ed. 1961). Government counsel candidly admitted at the oral argument that there are no policy grounds for vitiating such a clause. This litigation was brought ostensibly because supposedly required by the literal language of Section 2056(b).

As taxpayer has put it (Br. 4–5), if decedent's estate had a value of $2,000,000 on the selected valuation date and Mrs. Smith's "estate" then had a value of $400,000, the amount passing to her under the equalization clause would be $800,000.[4] The agreed reason for using such a clause is that

"under the graduated estate tax rate structure, a smaller aggregate estate tax in the estates of husband and wife will be due [the total will be due after the second death] if both estates are in the same estate tax rate bracket than if the estates are in disparate brackets as a result of the deferral of the maximum estate tax from the death of the first spouse, through use of the maximum marital deduction, to the death of the surviving spouse" (Taxpayer's Br. 5).

Since Mrs. Smith had an independent estate in Michigan, a non-community property state, this equalization clause was to achieve a "pure" community property result. This accorded with the purpose of the marital deduction, which was to put residents of non-community and community property states on an equal footing for estate tax purposes. See *Northeastern Pennsylvania Bank & Trust Co. v. United States*, 387 U.S. 213, 219, 87 S.Ct. 1573, 18 L.Ed.2d 726. This equalization clause would determine the amount of property to be received by Mrs. Smith under the trust. That amount was meant by decedent to qualify for the marital deduction in his estate and to be taxed in full in his spouse's estate.

The Commissioner contends that because of the remote possibility that Mrs. Smith would receive nothing from the equalization clause bequest, the terminable interest rule of Section 2056(b)(1) applies (see note 2 *supra*.[5] At the same time, he admits that a formula fractional share bequest[6] "does qualify for the marital deduction" (Br. 15) even though the precise fraction and the value of the fractional share cannot be known until the estate makes its choice of valuation dates and the wife there too can theoretically take nothing. To distinguish the formula fractional marital bequest from Mrs. Smith's interest, the Commissioner asserts that there is an additional factor outside decedent's estate that his trustee had to consider, namely, the valuation of Mrs. Smith's "estate" at the alternate valuation date. But, as Judge Drennen responded, "The only possible effect on the spouse's [Mrs. Smith's] interest from [that] 'additional factor' * * * relates to the *value* of that interest. And even that effect is limited solely to the amount of market fluctuation in the value of the assets in the spouse's 'estate'." (66 T.C. at 431; footnote omitted.) Therefore, the Tax Court rightly concluded that both a formula fractional share bequest and an equalization clause bequest should qualify for the marital deduction.

The hidebound position taken by the Commissioner is illustrated by his repre-

---

4. $800,000 is one half the amount by which the value of the decedent's estate exceeds the value of Mrs. Smith's "estate." This would be in lieu of the maximum marital deduction of $1,000,000.

5. The extent to which the interpretation of "terminable interest" in Section 2056 is based on an incorporation of local law was ignored by both parties and does not appear to be an issue in this case. Some federal courts have relied in whole or in part on the status of the relevant interest in state law (see *Jackson v. United States*, 317 F.2d 821, 824 (9th Cir. 1963), affirmed, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871; *Estate of Neugass v. Commissioner*, 555 F.2d 322, 326, 328 n. 5 (2d Cir. 1977)), while others have not mentioned state law in determining whether an interest is terminable (see *Estate of Mackie v. Commissioner*, 545 F.2d 883 (4th Cir. 1976)). Here neither party offered a local interpretation of the equalization clause and apparently none exists.

6. Under such a clause, the numerator of the fraction is the maximum allowable marital deduction and the denominator is the value of the residual estate. See 66 T.C. at 434 n. 3; 1 Casner, *supra*, at 795.

sentative's statement at oral argument that even if this equalization clause had a rider providing that if Mrs. Smith's "estate" were greater, she would still receive $100 from decedent, the terminable interest rule would nevertheless govern. In his brief, the Commissioner stresses that under this equalization clause, the trustee might have to allocate nothing to the marital deduction so that Mrs. Smith's interest would be zero. But, as Judge Drennen noted, in that event the entire value of the trust would be taxed in decedent's estate. There would be no marital trust to tax in Mrs. Smith's estate, and decedent's estate would have no marital deduction entirely independent of Section 2056(b)(1). (66 T.C. at 429.)

As the Tax Court explained, the purpose of the terminable interest rule in Section 2056(b)(1) forbidding a marital deduction is "to limit the marital deduction to the value of interests in property passing from the decedent to his surviving spouse which were interests of such a character that, unless consumed or disposed of prior to the surviving spouse's death, would be taxable in the surviving spouse's estate at her death" (66 T.C. at 423). That purpose is fully satisfied because Mrs. Smith's equalization clause share was taxable in her estate when she died in 1971. Because the purpose of Section 2056(b)(1) has been met, the Commissioner's dependence on any literal statutory language arguably contrary should not prevail, for in such an instance, form may not be elevated over substance. *Allen v. United States*, 359 F.2d 151, 153–154 (2d Cir. 1966), certiorari denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67; see also *Estate of Neugass v. Commissioner*, 555 F.2d 322 (2d Cir. 1977); *Estate of Mackie v. Commissioner*, 545 F.2d 883 (4th Cir. 1976). Since there was no possibility of Mrs. Smith's interest in decedent's property passing to others without the payment of an estate or gift tax, the rationale of the terminable interest rule has been fully satisfied. See S.Rep. No. 1013, Part 2, 80th Cong., 2d Sess. (1948–1 Cum. Bull. 332 *et seq.*).

 There being no possibility that the interest passing to Mrs. Smith might escape

taxation altogether, the Tax Court properly refused to apply the terminable interest rule. Whether or not the value of the property left to Mrs. Smith might change under the equalization clause, the "interest passing" to her (sec. 2056(b)(1)) would not terminate, so that even literally the terminable interest rule does not apply. On decedent's death, the corpus was to "be divided into two portions, one of which shall be called the Marital Portion and the other of which shall be called the Residual Portion" (opening clause of Article IV). Thus on his death in 1970, the former interest passed to and was vested in Mrs. Smith, thereby falling outside the language of the terminable interest rule. Under the statute, as the Tax Court realized, the criterion is not the possible termination of value, as the dissenting judge held and as the Commissioner contended below, but the possible termination of "interest" (66 T.C. at 430). Since Mrs. Smith's interest was not terminable, the Tax Court correctly held that this exception to the marital deduction was inapplicable.

*Jackson v. United States*, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871, which held that an allowance provided by California law for the support of a widow during the settlement of her husband's estate was a terminable interest under 26 U.S.C. § 812, the predecessor to Section 2056, is not to the contrary. Because the widow's allowance in that case was a creature of state law, the state courts already had considered the issue of whether the allowance was vested at the time of the husband's death and had held that it did not vest. See *Jackson v. United States*, 317 F.2d 821, 825 (9th Cir. 1963). Both the Court of Appeals and the Supreme Court, apparently based on that state determination, quickly accepted the fact that the interest involved was not vested and focused instead on the taxpayer's position that the terminability of her interest should be judged as of the date of the Probate Court's order rather than as of the date of her husband's death. It was in this context that Justice White used the language, quoted by the dissenting judge in the Tax Court, that "there is no provision in the Code for deducting all terminable inter-

ests which become nonterminable at a later date and therefore taxable in the estate of the surviving spouse if not consumed or transferred." 376 U.S. at 509–510, 84 S.Ct. at 873.

When the facts of the *Jackson* case are put in this light, the inapplicability of both Justice White's quotation and the holding of the case should be clear. See 66 T.C. at 428–430; *Estate of Neugass v. Commissioner, supra,* at 328 n. 5. Rather than being accepted by state law and the federal courts as a terminable interest, the Marital Portion of this trust apparently has never been construed by the state courts, nor did the Commissioner point to any analogous state decisions. Focusing on the issue of terminability at the time of the spouse's death, and guided on that issue not by *Jackson* but instead by the policies declared in *Northeastern Pennsylvania Bank & Trust Co. v. United States, supra,* which construed another subsection of 26 U.S.C. § 2056 and emphasized "Congress' intent to afford a liberal 'estate-splitting' possibility to married couples," 387 U.S. at 221, 87 S.Ct. at 1578, we have determined that the Marital Portion was non-terminable at the date of the husband's death. Thus rather than being controlled by Justice White's discussion of an interest that is terminable at the husband's death, this trust fits generally within the proviso that Justice White included at the close of his opinion, 376 U.S. at 511, 84 S.Ct. at 873:

> "The achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills; we have no fear that our decision today will prevent * * * the full utilization of the marital deduction * * *."

The Smith trust was carefully drafted three years after *Jackson* to utilize the marital deduction fully and, unlike *Jackson* there is no vagary of state law that should prevent that accomplishment.

JUDGMENT AFFIRMED.