ESTATE OF JOHN T. HIGGINS, DECEASED, MANUFACTURERS NATIONAL BANK OF DETROIT, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11431-86.        Filed July 19, 1988.

*Leonard J. Prekel,* for the petitioner.
*Roberta M. Hamm,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of John T. Higgins in the amount of $185,813.46. The issue for determination is whether the personal representative of the estate made a valid qualified terminable interest property election under section 2056(b)(7).[1]

FINDINGS OF FACT

Manufacturers National Bank of Detroit (the bank), is the personal representative of the Estate of John T. Higgins.

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise noted.

Its principal office at the time of the filing of the petition was in Detroit, Michigan.

John T. Higgins (hereinafter Higgins or decedent), a retired attorney, died on April 29, 1982, survived by his wife, Margaretta Higgins. Higgins had been a partner in the Detroit, Michigan, law firm of Higgins, Starrs & MacDonell.

Twenty-seven days prior to his death, Higgins executed a will naming his former law partner, John R. Starrs (Starrs), as personal representative. Relevant to this case, article seven of decedent's will read as follows:

> SEVENTH: Should my beloved wife, MARGARETTA C. HIGGINS, survive me by thirty days, I give and bequeath all the rest and residue of my estate unto my Trustee, hereafter named, to invest and reinvest the assets thereof, to collect the income therefrom, to pay the taxes and expenses of maintenance and administration thereof and to pay the net income therefrom to or for the account of my beloved wife, MARGARETTA C. HIGGINS, in monthly or other convenient installments (but not less often than annually) during her lifetime. If, in the opinion of my Trustee, considering income available to my beloved wife from all other sources, my said beloved wife, MARGARETTA C. HIGGINS, shall, by reason of illness, accident or misfortune, stand in need of funds for medical, surgical, dental, hospital or nursing expenses, or expenses of invalidism or convalescence, my Trustee is authorized to invade principal to the extent necessary to meet such need or needs. This power of invasion shall be continuous and shall not be exhausted by use.

Paragraph 8 specified that, upon the death of Higgins' spouse, the remaining trust assets be paid to three qualified educational institutions as follows: 10 percent to Manhattanville College, 10 percent to the Academy of the Sacred Heart, and 80 percent to the University of Notre Dame Du Lac.

The will was admitted to probate and Starrs was appointed personal representative of the estate by order of the Oakland County Probate Court, Pontiac, Michigan, dated June 22, 1982. Starrs died on October 20, 1984, and the bank succeeded him as personal representative of the estate by order of the Oakland County Probate Court, dated January 2, 1985.

The law firm of Higgins, Starrs & MacDonell prepared a June 1982 version of a Form 706, U.S. Federal Estate Tax Return, for the estate. Both Starrs, as personal representa-

tive of the estate, and Robert MacDonell, as preparer of the Form 706, signed the return.

Starrs filed the return with the Internal Revenue Service (IRS) on January 28, 1983. On page 2 of the return the following question was answered negatively: "Do you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)?" Attached to the return was a letter written by Starrs explaining the computations for determining the value of the marital and charitable deductions taken on the return. The letter stated in pertinent part:

Sirs:

A computation indicating how we determined the value of the marital deduction and the charitable deduction (the trust remainder to the charities being liable for the taxes) in the above matter follows.

| | | |
|---|---|---|
| a. Gross estate, line 1 of recapitulation | | 1,410,000.36 |
| b. Deductions to arrive at residue: | | |
| 1. Schedules J & K | 129,267.25 | |
| 2. Cash gifts from par. 3 of will | 39,000.00 | |
| 3. Securities gifts, pars. 4 & 5 of will | 358,725.00 | |
| 4. Paintings, gifts by par. 6 of will | 60,000.00 | |
| 5. Schedule E gifts to spouse, not probated | 130,113.02 | 717,105.27 |
| c. Presumed value of probate residue | | 692,895.09 |

Decedent's spouse, Margaretta C. Higgins, was born December 28, 1902. At the time of decedent's death, April 29, 1982, she was 79 years of age. By the Michigan life expectancy tables, she has 6.21 years, which, multiplied by the 5 percent factor, equals 31.05 percent. Hence the value of her interest in the residue of the estate appears to be 31.05 percent of $692,895.09, or $215,143.93. To get this figure we add the figure ($130,113.02) from Schedule E in order to get the total for Schedule M of $345,256.95.

The charitable/educational institutions who are the remaindermen after the death of the life tenant would, as we see it, have their interest in the probate estate figured at 68.95 percent (100 percent minus the spouse's interest of 31.05 percent) of $692,895.09, or $477,751.16, to which would be added the gift of paintings from par. 6 ($60,000.00) for a total charitable gift of $537,751.16, subject to being reduced (on the 706) for the estate and inheritance taxes. The Michigan State Inheritance Tax of $51,340.00 has already been paid and the receipt is attached to the Estate Tax Return. We estimated the Federal Estate Tax at $96,000 for purposes of Schedule O, thus reducing the available allowable deductions to $390,411.16.

On Schedule M, Bequests, etc., to Surviving Spouse (the marital deduction), attached to petitioner's Form 706, the estate claimed that property passed to Margaretta Higgins in the amount of $345,256.95, $130,113.02 attributable to her interest as a surviving joint tenant of assets listed in Schedule E [2] and $215,143.93 attributable to her life income interest in the residual trust established under paragraph 7 of decedent's will. The estate did not designate that any of the property listed on Schedule M was qualified terminable interest property.

On Schedule O, Charitable, Public, and Similar Gifts and Bequests (the charitable deduction), petitioner showed three educational institutions receiving the net amount of $390,411.16, $60,000 in cash and $330,411.16 attributable to the trust remainder established under paragraph 8 of Higgins' will.

In the notice of deficiency, respondent disallowed $215,143.93 of the claimed marital deduction because the life income interest passing to decedent's spouse will terminate or fail upon the death of decedent's spouse, and because it has not been established that an election was made to treat any portion of the property passing to decedent's surviving spouse as qualified terminable interest property (QTIP).

Respondent further disallowed $330,411.16 of the claimed charitable deduction because the remainder interest passing to the educational organizations was in the form of a split-interest trust, not in the form of a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund. See sec. 2055.

The June 1982 version of the Form 706 was the first Form 706 to include the QTIP election. The QTIP election question, as stated above, read, "Do you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)."[3] The instructions for this question

---

[2]This amount was allowable only in the amount of $127,863.02 according to the notice of deficiency.

[3]Page two of the return, entitled General Information, question 12, was as follows:

General Information

12. Do you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)?       Yes         No

accompanying the June 1982 Form 706 explained the effect of the election and the procedure for making it. The instructions stated that in order to make the election, the election question must be answered by checking the "Yes" block and, if the total gross estate is more than $500,000, as is the gross estate of Higgins, the property for which this election is made must be included in Schedule M and clearly marked as "qualified terminable interest property."[4]

With respect to the election to deduct qualified terminable interests, the instructions for Schedule M[5] (Bequests, etc. to Surviving Spouse)of the June 1982 Form 706 defined "Qualified Terminable Interest Property," explained the effect of the election, and described the procedure for taking the election. The instructions provided that in order to claim this election, which is, once made, irrevocable, you must check "Yes" to line 12 of "General Information" on

---

If "Yes," please attach the additional information required by the instructions.

[4]The instructions in full provide:

Line 12.—Terminable interest election.—Terminable interests are described in the instructions for Schedule M. Usually, these interests do not qualify for the marital deduction. However, the executor may elect to have "qualified terminable interest property" included in the marital deduction. If this election is made, the surviving spouse's gross estate will include the value of the "qualified terminable interest property." See the instructions for line 7, above.

To make the election, you must check "Yes" to line 12. If the total gross estate is more than $500,000, the property for which this election is made must be included on Schedule M and clearly marked as "qualified terminable interest property." If the total gross estate is $500,000 or less, you need not file Schedule M. However, to make this election you must attach a sheet to the Form 706 describing the "qualified terminable interest property" for which the election was made and giving its value.

"Qualified terminable interest property" is defined in the instructions to Schedule M.

[5]Instructions for Schedule M "Election to Deduct Qualified Terminable Interests" provide in full:

Election to Deduct Qualified Terminable Interests.—You may elect to claim a marital deduction for qualified terminable interest property or property interests. The election is irrevocable. The effect of the election is that the property (interest) will be treated as passing to the surviving spouse and will not be treated as a nondeductible terminable interest. All of the other marital deduction requirements must still be satisfied before you may make this election. For example, you may not make this election for property or property interests that are not included in the decedent's gross estate.

Qualified Terminable Interest Property is property that:

(1) passes from the decedent; and

(2) in which the surviving spouse has a qualifying income interest for life.

The surviving spouse has a qualifying income interest for life if the surviving spouse is entitled to all of the income from the property payable annually or at more frequent intervals, and during the surviving spouse's lifetime no person has a power to appoint any part of the property to any person other than the surviving spouse.

In order to claim this election, you must check "Yes" to line 12 of "General Information." On Schedule M, you should group the property interests for which you made the election separately and mark them "Qualified Terminable Interest Property."

Form 706 and on "Schedule M, you should group the property interests for which you made the election separately and mark them 'Qualified Terminable Interest Property.' "

As stated above, the personal representative of decedent's estate answered "No" to the election question, and nowhere on Schedule M was the life income interest passing to decedent's spouse designated as qualified terminable interest property.

In January 1984, the IRS revised Form 706. The qualified terminable interest election question was moved from the "General Information" section to a new section entitled "Elections by the Executor." The language of the QTIP question was not changed.

In March 1985, the IRS again revised Form 706. The QTIP election question was revised to read, "Do you elect to claim a marital deduction for qualified terminable interest property (QTIP) under 2056(b)(7)?"

## OPINION

Prior to the enactment of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, the estate tax law, in general terms, required the inclusion of the value of all of a deceased spouse's property in his gross estate and allowed a marital deduction in an amount not exceeding the greater of $250,000 or 50 percent of the value of the property passed to his surviving spouse. Sec. 2056(a) and (c)(1) as then in effect. In order to limit the marital deduction to interests similar to the interest owned by a surviving spouse in a community property State, the marital deduction was denied for a "terminable interest." Sec. 2056(b) as then in effect. A terminable interest, in general terms, is one that will terminate or fail either upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur. Sec. 2056(b)(1). Thus, an interest in the nature of a life estate or similar interest was ineligible for the marital deduction. See generally *Dougherty v. United States,* 292 F.2d 331, 337 (6th Cir. 1961).

The Economic Recovery Tax Act of 1981 made significant changes in the estate and gift tax laws. Among other

changes, it eliminated the ceiling on the marital deduction (sec. 2056(a)), and permitted transfers of property between spouses without the incursion of a gift tax. Sec. 2523(a). The theory underlying these changes was, in substance, that husband and wife constitute a single ownership unit and transfers of their property should be taxed only once. H. Rept. 97-201 (1981), 1981-2 C.B. 352, 377-379 (1981).

In addition to eliminating the ceiling on the marital deduction, the Economic Recovery Tax Act of 1981 modified the terminable interest concept. In this respect, section 2056(b)(7)[6] was added to the Internal Revenue Code to allow a marital deduction for "qualified terminable interest property" (QTIP). The section defines qualified terminable interest property as property in which a deceased spouse passes to the surviving spouse a "qualifying income interest for life." In general terms, a surviving spouse has a qualifying income interest for life which is not treated as a terminable interest if she is entitled to all of the income for

---

[6]SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

\*       \*       \*       \*       \*       \*       \*

(7) ELECTION WITH RESPECT TO LIFE ESTATE FOR SURVIVING SPOUSE.—
(A) IN GENERAL.—In the case of qualified terminable interest property—
(i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and
(ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.
(B) QUALIFIED TERMINABLE INTEREST PROPERTY DEFINED.—For purposes of this paragraph—
(i) IN GENERAL.—The term "qualified terminable interest property" means property—
(I) which passes from the decedent,
(II) in which the surviving spouse has a qualifying income interest for life, and
(III) to which an election under this paragraph applies.
(ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—
(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, and
(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).
(iii) PROPERTY INCLUDES INTEREST THEREIN.—The term "property" includes an interest in property.
(iv) SPECIFIC PORTION TREATED AS SEPARATE PROPERTY.—A specific portion of property shall be treated as separate property.
(v) ELECTION.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

life and if, during the surviving spouse's lifetime, no one else has a power to appoint any part of the property to any person other than the surviving spouse. Sec. 2056(b)(7)(B)(ii). The entire property, the life interest as well as the remainder, is treated as passing to the surviving spouse and, accordingly, the entire property qualifies for the marital deduction. The section contemplates that the value of the entire property, to the extent not consumed, will be included in the gross estate of the surviving spouse. H. Rept. 97-201 (1981), 1981-2 C.B. 352, 377-379 (1981).

This QTIP treatment may also be permitted in the case of a bequest which is split between a life interest and a remainder interest which goes to charity. Where a decedent's will provides an income interest in the spouse for her life and a remainder interest for charity, the entire property may be considered as passing to the spouse if the life estate is a qualifying income interest under the foregoing definition. In such circumstances, the entire value of the property will be eligible for the marital deduction. Upon the spouse's death, the property will be included in her estate but any property passing outright to charity at that time may qualify for a charitable deduction in her estate. H. Rept. 97-201, *supra*, 1981-2 C.B. at 379 n. 4.

In order to qualify for QTIP treatment, however, an election must be made; otherwise the terminable interest rules described above may apply. Section 2056(b)(7)(B)(v) provides:

An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

This election by the executor, available to estates of decedents dying after December 31, 1981, can be made whether or not the decedent's will so instructs. The election may be made for all or any part of the property that meets the QTIP requirements. Sec. 22.2056-(1)(a) and (b), Temporary Income Tax Regs., 47 Fed. Reg. 41736 (Sept. 22, 1982).

Despite the negative answer to the QTIP question 12 on page 2 of the estate tax return, petitioner contends that an examination of its estate tax return as a whole, particularly Schedules M and O, shows an intention to make the QTIP

election. Respondent maintains that the estate tax return does not support petitioner's contention. We agree with respondent.

In *Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075, 1082-1083 (1985), the Court summarized the standards developed by the decided cases as follows:

We have examined the cases as to what constitutes a statement of election under various provisions of the Internal Revenue Code and have found that, absent a formal election, a submitted return and its attached schedules must evidence an affirmative intent on taxpayer's part to make the required election and be bound thereby. E.g.,*American Air Filter Co. v. Commissioner*, 81 T.C. 709, 720-723 (1983); *Tipps v. Commissioner*, * * * [74 T.C. 458, 468-471 (1980)]; *Hewlett-Packard Co. v. Commissioner*, 67 T.C. 736, 747-750 (1977). Failure to manifest such intent has repeatedly resulted in taxpayer's alleged election being rejected. E.g., *Knight-Ridder Newspapers v. United States*, 743 F.2d 781, 793-797 (11th Cir. 1984); *Young v. Commissioner*, 83 T.C. 831, 839-840 (1984); *Estate of Skaggs v. Commissioner*, at 205-208 [75 T.C. 191 (1980), affd. per curiam 672 F.2d 756 (9th Cir. 1982]; *Valdes v. Commissioner*, 60 T.C. 910, 913-915 (1973).

In determining whether literal compliance with an election provision is required, it is necessary to examine the purpose of the election, its relationship to other Code provisions, and the terms of the underlying statute. See *Valdes v. Commissioner*, 60 T.C. 910, 913 (1973).

An unequivocal manifestation of an affirmative intent to make the election of QTIP treatment on the estate tax return is, in our opinion, required because the effect of an election is not confined to the marital deduction obtained by the electing estate. Section 2044 provides that upon the death of the surviving spouse, her gross estate includes the "value of any property" in which she had "a qualifying income interest for life" if a marital deduction as QTIP "was allowed with respect to the transfer of such property." Estate tax rates and values change, and the section does not permit the executor to wait and see whether an election would be beneficial. The remainderman takes QTIP property at a new basis equal to its value on the estate tax valuation date elected by the executor of the surviving spouse. Sec. 1014(b)(10). If the QTIP property passes to charity upon the death of the surviving spouse, the estate tax charitable deduction is allowed in her estate rather than in the estate

of the spouse first to die. H. Rept. 97-201 (1981), 1981-2 C.B. 379 (1981).

Further, if the gross estate of the surviving spouse includes "property the value of which is includible in the gross estate by reason of section 2044," her estate is entitled to recover the Federal estate tax thereon from "the person receiving the property," i.e., from the remainderman. The amount so recoverable is the portion of the tax resulting from the inclusion of the QTIP in the gross estate, i.e., the excess of the (1) estate tax over (2) the estate tax that would have been payable if the QTIP had not been included. Sec. 2207A.

In addition, in case of an inter vivos disposition of "all or part of a qualifying interest for life in any property" for which a QTIP marital deduction "was allowed with respect to the transfer of such property," the disposition is treated as a gift by the surviving spouse of "all interests" in such property. Sec. 2519. The section uses the term "disposition" without further explanation but the committee report states that the term includes any transfer "by gift, sale, or otherwise." H. Rept. 97-201, *supra*, 1981-2 C.B. 378. Accordingly, a surviving spouse's disposition (other than by consumption) of all or any part of her income interest subjects her to a gift tax on all interests, including the remainder interest, in the QTIP property.

Thus, the QTIP election carries with it burdens as well as the benefit of a marital deduction for the electing estate. The essence of the election requirement is that the executor of the spouse first to die unequivocally communicate his election and implicit agreement to accept the burdens as well as the benefits of the tax treatment afforded by the section. See *Young v. Commissioner*, 783 F.2d 1201, 1206 (5th Cir. 1986), affg. 83 T.C. 831 (1984); *DeMarco v. Commissioner*, 87 T.C. 518, 524-525 (1986), affd. without published opinion 831 F.2d 281 (1st Cir. 1987); *Valdes v. Commissioner*, 60 T.C. 910, 914 (1973). The section does not permit the taxpayer to wait and later compare the benefits with the burdens; it requires the unequivocal choice to be made on the estate tax return. Because of the wide range of consequences of the election (secs. 2044, 2207A, 2519, and 1014(b)(10), reviewed above), as well as changes in tax rates

and values, any other rule would spawn endless disputes and "create an unbearable administrative burden." *Alabama Pipe Co. v. Commissioner,* 23 T.C. 95, 98 (1954); *Young v. Commissioner,* 83 T.C. at 841. As in the case of other elective provisions, the policy of the section "is furthered by requiring a clear manifestation to the government of taxpayer's election"; any other rule "would leave room for the taxpayer to argue later that it had never intended to make an election." *Knight-Ridder Newspapers, Inc. v. United States,* 743 F.2d 781, 795 (11th Cir. 1984).

In the instant case, we find no evidence of an election in decedent's estate tax return. To the contrary, as noted above, question 12 on page 2 of the return, asking whether "you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)" was answered "No" by placing an "X" in the block designed to show whether a QTIP election was made. The instructions accompanying the return (note 4 *supra*) plainly state that:

To make the election, you must check "Yes" to line 12. If the total gross estate is more than $500,000 [as it was in this case], the property for which this election is made must be included on Schedule M and clearly marked as "qualified terminable interest property."

Schedule M, which is accompanied by further detailed instructions (note 5 *supra*), contains no clue that a QTIP election was being made. The schedule does not identify any qualified terminable interest property. Under the heading "Description of property interests passing to the spouse" are listed an "Interest taken as surviving joint tenant" (valued at $130,113.02) and "Value of life income interest in corpus of trust established under paragraph SEVENTH of will" (valued at $215,143.93). The total value was shown as $345,256.95. On Schedule O are listed the three remainder interests, valued at a total of $390,411.16, bequeathed to the three charitable organizations listed in paragraph 7 of the will. In the recapitulation schedule, deductions were carried forward from Schedule M, Bequests, etc., to Surviving Spouse, in the amount of $345,256.95 and from Schedule O, Charitable, Public and Similar Gifts and Bequests, in the amount of $390,411.16.

Contrary to petitioner's contention that the entries on Schedules M and O reflect a "manifestation of choice, and

exercise of the QTIP election by an overt act," we think the schedules are inconsistent with a QTIP election. As discussed above, if a decedent transfers a qualified income interest to his spouse with the remainder to charity, the entire value of the property will, pursuant to the executor's election, be considered as passing to the surviving spouse and will qualify for a marital deduction of the entire property. Although the entire value of the property will be included in the spouse's gross estate, any property passing outright to charity may qualify for a charitable deduction. Secs. 2044(c), 2055(a); H. Rept. 97-201, *supra*, 1981-2 C.B. at 379 n. 4.

As we read Schedules M and O, as well as the letter attached to the estate tax return, they reflect a claim not to a marital deduction for the entire property but claims to a charitable deduction of $390,411.16 for the value of the remainder interests to be paid to the charities and a marital deduction of $215,143.93 for the value of the life income interest provided for the surviving spouse. Petitioner does not contest the determination in the notice of deficiency that the charitable deduction is not allowable under section 2055 and could hardly do so in view of the powers given the trustee by paragraph 7 of the will to pay the taxes and administration expenses and to meet the long-term needs of the surviving spouse. Nor does petitioner contest the determination that the life interest was a terminable interest. Instead, petitioner has shifted its ground and now asserts that a QTIP election was made. True, the section 2056(b)(7) QTIP election permits some postmortem tax planning by the executor of the spouse first to die but that planning must be done when the estate tax return is filed. It cannot be done later.

Petitioner makes the argument that, because the remainder interest was bequeathed to charity, there is no reason why decedent's estate would not wish to make the QTIP election. True, the potential consequences of a QTIP election where the remainder interest is destined to go to charity may be less onerous for the surviving spouse than where a charity is not involved. Although section 2044 would require the value of the remainder interest to be included in her gross estate, section 2055 would permit an offsetting

deduction. Further, the liability provisions of section 2207A and the basis provisions of section 1014(b)(10), discussed above, may be neutral. But neither the language nor the legislative history of section 2056(b)(7)(B)(v) makes any distinction on the election requirements with respect to remainder interests passing to charity and remainder interests passing to individuals. Nor does the language of section 2519, which imposes a gift tax on the entire property upon the surviving spouse's disposition of all or part of her life interest, make such a distinction.

We think the statute requires a clear manifestation of an election and does not require the Commissioner to calculate the possible tax burdens or benefits or speculate which course would be most advantageous to the two estates. There is no such manifestation in this case. In fact, the only direct evidence on the point is directly to the contrary: the negative answer to question 12 on page 2 of the return which asks whether the election is being made.

Finally, petitioner emphasizes that the estate tax return was filed only a short time after the effective date of section 2056(b)(7) and that there was confusion as to how the election should be made. Petitioner also points to certain IRS inter-office communications regarding the settlement of cases in which estates had made imperfect QTIP elections. We have studied that correspondence with some care, and we do not think it describes cases like this one where there is simply no evidence on the estate tax return showing an effort to make a QTIP election and where there is an express denial of an intention to do so.

Accordingly, we are compelled to hold that the executor did not make a valid section 2056(b)(7) election.

To reflect the foregoing,

*Decision will be entered under Rule 155.*