ESTATE OF ARTHUR M. CLAYTON, JR., DECEASED, MARY MAGDALENE CLAYTON AND THE FIRST NATIONAL BANK OF LAMESA, INDEPENDENT CO-EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24320-90.     Filed September 16, 1991.

*Wm. Monroe Kerr* and *A.M. Nunley III,* for the petitioner.

*James W. Lessis,* for the respondent.

COHEN, *Judge:* Respondent determined a deficiency of $531,534.97 in petitioner's Federal estate tax. The sole issue for decision is whether the surviving spouse's income interest in property constitutes "qualified terminable interest property" within the meaning of section 2056(b)(7) where the income interest is subject to the executor's election. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect as of the date of decedent's death.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Arthur M. Clayton, Jr. (decedent), died on

December 22, 1987. Decedent was survived by his second wife, Mary Magdalene Clayton (Mrs. Clayton), and by his four children from his first marriage. At the time the petition in this case was filed, Mrs. Clayton was a resident of the State of Texas, and the First National Bank of Lamesa, Texas (First National), was located in the State of Texas.

## The Will

Decedent executed a last will and testament (the will) on April 8, 1982, and a first codicil (the codicil) to the will on June 23, 1982. In the will, decedent made a specific bequest of certain property to Mrs. Clayton. In addition, decedent created two trusts for the benefit of Mrs. Clayton during her life.

The corpus of the first trust (trust A) consisted of "an interest in * * * [decedent's] estate equal in value to the amount in effect exempted from federal estate tax by application of the federal estate and gift tax unified credit available" to decedent's estate. The corpus was given to the trustees for the benefit of Mrs. Clayton during her life, and the remainder of trust A was for the benefit of decedent's children who were living at the date of death of Mrs. Clayton.

The corpus of the second trust (trust B) consisted of the residue of decedent's estate, that is, decedent gave "all of the rest of my estate to the trustees of Trust 'B,'" for the benefit of Mrs. Clayton, "for and during the rest of her life," and, upon her death, the remainder of trust B was to "be added to and become a part of the corpus of Trust 'A,' for the use and benefit of my then living children."

With respect to trust B, Article THIRD, paragraph D of the will provided:

In the event my executors fail or refuse to make the election under Section 2056(b)(7)(B)(II)(v) of the Internal Revenue Code of 1954, as amended, with respect to my Trust "B" property on the return of tax imposed by Section 2001 of the Internal Revenue Code of 1954, as amended, then the property with respect to which such election was not made shall pass to and become a part of the corpus of Trust "A" for the benefit of my Trust "A" beneficiaries.

Finally, the will provided that, if Mrs. Clayton made a qualified disclaimer of interest in any part of the trust B assets within the meaning of section 2518, any assets disclaimed would pass to a third trust for the benefit of decedent's surviving children.

The will required that distributions of the current income of the trusts were to be made at the discretion of the trustees in such amounts as the trustees deemed necessary for the maintenance, health, education, and medical care of the beneficiary. With regard to distributions of the current income of trust B, however, Article SIXTH, paragraph A of the will provided:

in no event shall the amount distributable by my trustees from Trust "B" to Mary Magdalene Clayton during any year be less than the current net income, to include all taxable net income under the Internal Revenue Code as then existing, of Trust "B" during that year. * * *

Article SEVENTH, paragraph A gave Mrs. Clayton the power to appoint the assets of the trusts, in favor of decedent's children, during her life (by deed) or upon her death (by will); the power of appointment by deed, however, could not be exercised with respect to the trust B assets. The surviving spouse's powers of appointment were not to be exercised in favor of Mrs. Clayton, her estate, her creditors, or the creditors of her estate.

Article EIGHTH, paragraph V of the will provided as follows with respect to decedent's intent as to the treatment of the trust B property as "qualified terminable interest property":

It is my intention that the assets of the Trust "B" trust be eligible to be treated, for federal estate tax purposes, as a [sic] "qualified terminable interest property" within the meaning of Section 2056 of the Internal Revenue Code, as amended. In no event shall my Trust "B" trustees be deemed to have any authority or power over Trust "B" assets which would prevent Trust "B" assets from being eligible to be treated as qualified terminable trust properties, if my executors make the timely election to have such properties treated as such.

In the will, decedent nominated, appointed, and constituted Mrs. Clayton and First National as cotrustees of trust A and trust B. In the event that Mrs. Clayton did not or could not serve as a trustee, First National was to serve as the sole trustee.

Decedent also nominated, appointed, and constituted Mrs. Clayton and First National as independent coexecutors of the will. In the event that Mrs. Clayton did not or could not serve as executor, First National was to serve as the sole independent executor. The executors were granted the same powers, duties, privileges, authorities, and responsibilities that were conferred upon the trustees under the terms of the will.

*Probate Proceedings*

On February 4, 1988, an application for probate of a written will and for letters testamentary (the application) was filed in the County Court at Law of Ector County, Texas (the county court). In the application, it was requested:

that the qualification of the First National Bank of Lamesa, Texas, as an Independent Co-Executor be deferred until it makes and files its oath as required by law after the estate's federal estate tax return has been filed, and the time for timely filing of the return has expired. * * * The request is made that Letters Testamentary issue first to Mary Magdalene Clayton as sole Independent Executrix of the estate upon her making and filing her oath, and that when The First National Bank of Lamesa, Texas, as Independent Co-Executor shall qualify by filing its oath, new Letters Testamentary shall issue to Mary Magdalene Clayton and The First National Bank of Lamesa, Texas, as Independent Co-Executors of the estate.

On February 29, 1988, the county court issued an order admitting will to probate and authorizing letters testamentary (the order). In addition to admitting the will and the codicil to probate, the order provided that Mrs. Clayton and First National were "duly qualified" to act as independent coexecutors and to receive letters testamentary. The order also directed:

that * * * Letters Testamentary shall issue to Mary Magdalene Clayton who is appointed as sole Independent Executrix of the Estate of Decedent until the First National Bank of Lamesa, Texas, makes and files its oath as required by law after the estate's federal estate tax return has been filed, when new letters testamentary shall be issued to Mary Magdalene Clayton and the First National Bank of Lamesa, Texas, as Independent Co-Executors of the estate of decedent * * * .

On that date, Mrs. Clayton executed her oath, and the county court issued letters testamentary to her as independent executrix.

Mrs. Clayton and First National each executed an oath as independent coexecutrix and coexecutor, respectively. On October 17, 1988, those oaths were filed and letters testamentary were issued to Mrs. Clayton and to First National as independent coexecutors. First National declined to serve as an executor until after the estate tax return was filed because it believed that an election, pursuant to section 2056, should be made by Mrs. Clayton in her sole capacity as executrix.

*Tax Treatment*

The Federal estate tax return, Form 706, was mailed on September 20, 1988. On the return, Mrs. Clayton, as executrix, claimed a marital deduction in the amount of $1,565,585. On Schedule M of the return, "Bequests, etc., to Surviving Spouse," the executrix checked the appropriate box and elected "to claim a marital deduction for qualified terminable interest property (QTIP) under section 2056(b)(7)." The total value of property interests not subject to a QTIP election was $78,950. The total value of property interests subject to a QTIP election was $1,077,635, which amount represented an undivided .563731 interest in specified bonds, notes, and cash listed on Schedules B and C of the return.

In the notice of deficiency, respondent determined, among other things, "that the marital deduction is $78,950.00 rather than $1,156,585.00 as reported on the estate tax return. Accordingly, the reported taxable estate is increased $1,077,635.00."

OPINION

*Background*

Section 2001 imposes a tax on the transfer of the taxable estate of all persons who are citizens or residents of the United States at the time of death. The amount of the tax is determined, in part, by the value of the taxable estate. Sec. 2001(b). Section 2051 defines the value of the taxable

estate as the gross estate less deductions. The issue in this case is whether an estate tax marital deduction should be allowed for the property in trust B for which a timely election was made pursuant to section 2056(b)(7).

Section 2056(a) allows a "marital deduction" from a decedent's gross estate for the value of property interests passing from a decedent to a surviving spouse. As a general rule, however, a marital deduction is denied for a "terminable interest," i.e., a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur." Sec. 2056(b)(1). Thus, an interest in the nature of a life estate is ineligible for the marital deduction. See, generally, *Estate of Nicholson v. Commissioner*, 94 T.C. 666, 671 (1990); *Estate of Higgins v. Commissioner*, 91 T.C. 61, 66 (1988), affd. 897 F.2d 856 (6th Cir. 1990).

The Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 403(d), 95 Stat. 172, 302, added section 2056(b)(7), which allows a marital deduction for "qualified terminable interest property." This section was enacted to allow a decedent to pass to the surviving spouse an interest in property without losing the ability to control the disposition of that property at the death of the surviving spouse. As explained in the House report:

unless certain interests which do not grant the spouse total control are eligible for the unlimited marital deduction, a decedent would be forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children. The committee believes that the tax laws should be neutral and that tax consequences should not control an individual's disposition of property. * * * [H. Rept. 97-201 (1981), 1981-2 C.B. 352, 378.]

Section 2056(b)(7)(B) defines "qualified terminable interest property" as follows:

(B) * * * For purposes of this paragraph—
 (i) IN GENERAL.—The term "qualified terminable interest property" means property—
  (I) which passes from the decedent,
  (II) in which the surviving spouse has a qualifying income interest for life, and
  (III) to which an election under this paragraph applies.

(ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * * and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

\* \* \* \* \* \* \*

(v) ELECTION.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

Section 2056(c)(1) provides generally that an interest in property is considered as passing from the decedent to any person if "such interest is bequeathed or devised to such person by the decedent."

The intent of section 2056(b)(7)(B)(ii) was to provide that the surviving spouse has a "qualifying income interest for life" in property only if the surviving spouse is "entitled for a period measured solely by the spouse's life to all the income from the entire interest, or all the income from a specific portion thereof." H. Rept. 97-201 (1981), 1981-2 C.B. 352, 378. Where an income interest will terminate prior to the death of the surviving spouse, that interest is not a qualified terminable interest within the meaning of section 2056(b)(7) and is not deductible. Thus qualified interests do not include interests that would lapse on events or occurrences other than the death of or a conveyance by the surviving spouse. See *Estate of Kyle v. Commissioner,* 94 T.C. 829, 845 (1990).

If a surviving spouse has a "qualifying income interest for life" within the meaning of section 2056(b)(7)(B)(ii), that interest is not treated as a terminable interest under section 2056(b)(1). The entire property, the life interest as well as the remainder, would be treated as passing to the surviving spouse, and the entire property would qualify for the estate tax marital deduction. Pursuant to section 2044, the value of the property, to the extent not consumed, would be subject to estate tax through inclusion in the gross estate of the surviving spouse. Similarly, if there is any disposition of all or part of a qualifying income interest for life during the surviving spouse's lifetime, a gift tax would be imposed under section 2519. *Estate of Kyle v. Commissioner,* 94 T.C. at 839; see H. Rept. 97-201 (1981), 1981-2 C.B. 352, 377-379.

Whether an interest in property qualifies for the marital deduction must be determined as of the date of decedent's death. *Jackson v. United States,* 376 U.S. 503, 507-508 (1964); *United States v. Edmonson,* 331 F.2d 676, 677-678 (5th Cir. 1964). Whether a surviving spouse received a "qualifying income interest for life" must also be determined as of the date of decedent's death. See *Estate of Nicholson v. Commissioner,* 94 T.C. 666, 675 (1990). Finally, "it is the possibility, not the probability, that an interest will terminate or fail that will determine whether the surviving spouse's interest is a 'qualifying income interest for life.' " *Estate of Kyle v. Commissioner,* 94 T.C. 829, 845 (1990).

*The Parties' Positions*

Respondent's position is that, as of the date of decedent's death, Mrs. Clayton's interest in trust B was subject to contingencies that could have caused that interest to terminate or fail prior to the time that the QTIP election was made. Respondent contends that Mrs. Clayton did not have a QTIP interest because her interest in trust B did not "pass" from decedent within the meaning of section 2056(b)(7)(B)(i)(I) and was not a "qualifying income interest for life" within the meaning of section 2056(b)(7)(B)(i)(II). This contention is based on Article THIRD, paragraph D, which provided that property in trust B with respect to which an election under section 2056(b)(7) was not made would pass to trust A.

Respondent contends that this position is consistent with section 20.2056(b)-7(c)(1), Proposed Estate Tax Regs., 49 Fed. Reg. 21357 (May 21, 1984), which provides that "an income interest (or life estate) that is contingent upon the executor's election * * * is not a qualifying income interest for life, regardless of whether the election is actually made." Proposed regulations, however, are not entitled to judicial deference and carry no more weight than a position advanced on brief. *Estate of Wallace v. Commissioner,* 95 .T.C. 525, 547 (1990), on appeal (11th Cir., April 12, 1990); *Laglia v. Commissioner,* 88 T.C. 894, 897 (1987).

Petitioner contends that respondent's position is not supported by section 2056(b)(7) or by the applicable legisla-

tive history. Petitioner's position is that Mrs. Clayton's right to all of the income from the trust B properties for which the marital deduction was claimed "came into existence at the moment of Mr. Clayton's death and will continue without possibility of termination until the moment of Mrs. Clayton's death."

## *Discussion*

We first address respondent's argument that Mrs. Clayton's interest in trust B is not a "qualifying income interest for life" because it was contingent upon an executor's election under section 2056(b)(7)(B)(v). A "qualifying income interest for life" exists where: (1) The surviving spouse is entitled to all of the income from the property for life, payable annually or more frequently, and (2) no one has the power to appoint any part of the property subject to the qualifying income interest to any person other than the surviving spouse during the lifetime of the surviving spouse. Sec. 2056(b)(7)(B)(ii).

With respect to the second requirement, the surviving spouse's interest in a QTIP trust cannot be subject to any power of divestment. That is, no person (including the surviving spouse) may have the power to appoint any part of the property subject to the qualifying income interest to any person other than the spouse during the spouse's life. See H. Rept. 97-201 (1981), 1981-2 C.B. 352, 378. Thus Article SEVENTH, paragraph A expressly denied to Mrs. Clayton the power to appoint assets in trust B by deed. By contrast, decedent's will gave to Mrs. Clayton the power to appoint, during her lifetime, the assets of trust A in favor of decedent's children. It is undisputed that trust A was not a qualified terminable interest.

Decedent's will provided that, if the executor did not make the election under section 2056(b)(7)(B)(v), the trust B property with respect to which such election was not made would "pass to and become a part of the corpus" of trust A for the benefit of decedent's trust A beneficiaries. The executor of decedent's estate (by virtue of the right to make the required election) therefore possessed the ability to control and to direct the assets to trust A or to trust B.

The effect of the executor's ability to control and to direct the assets in both trusts was that the possibility existed, as of the date of decedent's death, that Mrs. Clayton would be divested of all or a part of her interest in trust B. This control over the trust assets is tantamount to a power to appoint property that was subject to the qualifying income interest.

Moreover, because of the executor's power to control and to direct the assets, the possibility existed that Mrs. Clayton would not be "entitled to all the income from the property" within the meaning of section 2056(b)(7)(B)(ii)(I). Mrs. Clayton's income interest in trust B would terminate or fail in the event that the executor did not or could not make the required election. The failure to grant Mrs. Clayton an income interest in trust B without regard to whether the applicable election was made disregards the requirement that the surviving spouse must be entitled for a period measured solely by the spouse's life to all of the income from the property.

In light of the foregoing, we conclude that Mrs. Clayton's interest in trust B is not a "qualifying income interest for life." Therefore, her interest in trust B is a nonqualified terminable interest, and decedent's estate is not entitled to an estate tax marital deduction for Mrs. Clayton's interest in the trust B property with respect to which an election was made.

Petitioner argues that it is "abhorrent" to deny decedent's estate the marital deduction in the instant case, inasmuch as Mrs. Clayton was the sole executor from the date of decedent's death until after the election was made. Petitioner does not, however, articulate grounds for reaching a contrary result merely because the control over the assets was possessed by Mrs. Clayton in her capacity as executrix.

In any event, decedent appointed Mrs. Clayton and First National as independent coexecutors of the will and, if Mrs. Clayton did not or could not serve as executor, First National was to serve as the sole independent executor. Viewed as of the date of decedent's death, it was therefore possible under the terms of decedent's will that Mrs. Clayton would serve as a coexecutor or that someone other

than Mrs. Clayton would serve as the sole independent executor prior to the time that the election was actually made. See *Estate of Ellingson v. Commissioner,* 96 T.C. 760, 767-768 (1991); *Estate of Doherty v. Commissioner,* 95 T.C. 446, 462-463 (1990).

Petitioner also argues that Mrs. Clayton's interest in the trust B property is a deductible interest only if it is an interest in "qualified terminable interest property" and that property only qualifies as such if an election is made. When the election is made and the other requirements of section 2056(b)(7)(B) are satisfied, petitioner argues, the property is then treated as "qualified terminable interest property," effective as of the date of a decedent's death.

An election, by definition, is necessary to insure that the property is qualified terminable interest property. The essence of section 2056(b)(7)(B)(i), however, is that a terminable interest is deductible only if it is an interest in *property* "in which the surviving spouse has a qualifying income interest for life"; if so, then an applicable election *may* be made with respect to such *property.* Compare *Estate of Tompkins v. Commissioner,* 68 T.C. 912 (1977). Whether the surviving spouse has an income interest for life in the property is independent of, and not dependent upon, the requirement that an election be made with respect to that property. If the surviving spouse does not have an income interest for life in the trust, then the election to treat the trust as a QTIP trust is ineffective.

Further, section 2056(b)(7) was enacted so that a decedent could control the disposition of property without the loss of potentially beneficial tax consequences. Thus, the election determines the tax treatment of the interest that was devised or bequeathed to the surviving spouse; the election does not, however, determine the nature of the interest that is granted to the surviving spouse.

This Court has held that a testamentary right to elect between alternate bequests is not a terminable interest within the meaning of section 2056(b)(1), at least where the right to elect is itself an absolute interest in property and is effective as of the date of decedent's death and where the interest that actually passes to the surviving spouse is nonterminable. Petitioner cites *Estate of Mackie v. Commis-*

*sioner,* 64 T.C. 308, 311 (1975), affd. per curiam 545 F.2d 883 (4th Cir. 1976), and argues that this rationale applies here.

The determinative factor here, however, is that Mrs. Clayton's income interest in trust B was subject to the executor's ability to terminate that interest. As of the date of decedent's death, Mrs. Clayton's interest was not payable if, and to the extent that, the executor failed to elect to treat the trust B assets as "qualified terminable interest property." The right to elect was given to the executor, not to Mrs. Clayton individually. In *Estate of Mackie v. Commissioner, supra,* however, the surviving spouse, in her individual capacity, was given an absolute right to take outright a specified portion of the decedent's estate. Therefore, that case and similar ones are distinguishable.

Petitioner also argues that decedent, in order to achieve the desired shifting of assets from trust B to trust A, could have "specif[ied] that the shifting event be the disclaimer of particular Trust 'B' property interests of the surviving spouse." This argument does not affect the result in this case. Section 2056(b)(7) was not designed to achieve the same result as the disclaimer provision of section 2518. The former section allows a decedent to pass property, or an interest therein, to the surviving spouse without losing the ability to control the disposition of that property at the death of the surviving spouse. That section, however, does not determine who receives an interest in the property; rather, if the QTIP election is made, the tax consequences are then determined. By contrast, if an interest in property is disclaimed within the meaning of section 2518, the disclaimed interest is treated as if it had never been transferred to the person making the qualified disclaimer. Sec. 2518(a). Instead, the interest is considered as passing directly from the transferor of the property to the person entitled to receive the property as a result of the disclaimer. Sec. 25.2518-1(b), Gift Tax Regs. In any event, decedent's will must be applied as written and not as it might have been written.

Finally, petitioner argues that, as a matter of policy, no purpose is served by denying decedent's estate the marital deduction. Petitioner relies on *Estate of Smith v. Commis-*

*sioner,* 565 F.2d 455 (7th Cir. 1977), affg. per curiam 66 T.C. 415 (1976), wherein the Court of Appeals for the Seventh Circuit explained the purpose of the terminable interest rule of section 2056(b)(1) and stated:

the Commissioner's dependence on any literal statutory language arguably contrary should not prevail, for in such an instance, form may not be elevated over substance. *Since there was no possibility of Mrs. Smith's interest in decedent's property passing to others without the payment of an estate or gift tax, the rationale of the terminable interest rule has been fully satisfied.* [*Estate of Smith v. Commissioner,* 565 F.2d 455, 459 (7th Cir. 1977); citations omitted; emphasis added by petitioner.]

In this case, however, there was a possibility that the surviving spouse's interest would terminate prior to her death, and this possibility is determinative of whether her interest qualified under section 2056(b)(7). See *Estate of Kyle v. Commissioner,* 94 T.C. 829, 844-845 (1990). Further, the "test is not whether that interest would or would not be taxable in * * * [the surviving spouse's] estate." *Estate of Smith v. Commissioner,* 66 T.C. 415, 430 (1976), affd. per curiam 565 F.2d 455 (7th Cir. 1977).

The other adjustments in the notice of deficiency have been conceded. To reflect the allowance of additional deductions,

*Decision will be entered under Rule 155.*